IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES D. RIEL,

    Petitioner,                   No. CIV S-01-0507 LKK KJM

    vs.                              DEATH PENALTY CASE

ROBERT L. AYERS, Jr.,
Warden of San Quentin
State Prison,

    Respondent.               ORDER

_____/

        The parties have responded to the court's request dated February 18, 2010, for briefing on the conduct of respondent's deposition of petitioner and potential objections thereto. After considering the parties' briefs and good cause appearing, the court finds and orders as follows.

I. Scope of Deposition

        The parties appear to be largely in agreement about the scope of the deposition on the following subjects, with one exception. Petitioner points out that respondent's reference to "brain injury" is not clear. The court agrees. Within ten days of the filed date of this order, the parties shall meet and confer and submit to the court a definition, or a concise presentation of their disagreements over a definition, of "brain injury" as incorporated in items 1 and 3 below.

1

1. Petitioner's communications with his trial defense team regarding: (a) his ability to form the specific intent to commit murder, (b) his mental health, (c) his "brain injury,"[1] (d) his leadership qualities, (e) his background, (f) alcohol use, (g) learning abilities, (h) his criminal history, and (i) his development of friendships with and information about co-defendants Virgal Edwards and John Osborne.

2. Petitioner's communications with his trial defense team regarding: (a) the investigation and strategic decisions affecting the development and presentation of his case, including his version of events leading up to the crime, during the commission of the crime, and following the crime up to the time of his arrest; (b) waiver of time to continue dates; and (c) the decision that petitioner testify.

3. Petitioner's communications with his current experts regarding the following subjects at the time of trial: (a) his ability to form the specific intent to commit murder, (b) his mental health, (c) his "brain injury,"[2] (d) his leadership qualities, (e) his background, (f) alcohol use, (g) learning abilities, and (h) his criminal history.

The parties disagree about the following area of inquiry, as described by respondent: "Riel's leadership qualities, learning abilities, and alcohol use insofar as they affect the guilt phase." (Dkt. No. 327 at 3.) Respondent argues this is a legitimate area of inquiry because the evidentiary hearing covers petitioner's guilt phase claims that his trial counsel failed to investigate and present evidence that it was unlikely petitioner was the leader in the crimes due in part to petitioner's personality, learning problems and alcohol use. Petitioner argues strenuously that all discovery must be limited to petitioner's communications with his trial defense team or petitioner's knowledge of acts of trial counsel or their agents. Petitioner's argument continues that since respondent could not have questioned petitioner prior to trial, the

---

[1] As described above, the parties are ordered to provide a definition of "brain injury."

[2] See note 1 supra.

state may not question petitioner now as a "percipient witness to substantive matters." (Dkt. No. 343 at 3.) Petitioner ignores the fact that this is a discovery deposition, not testimony. In this civil proceeding, respondent has a right to seek the discovery of information that reasonably may lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Moreover, the issue is not what the state could have presented at trial; rather, the issues in this habeas proceeding are: (1) what information should petitioner's trial counsel have gathered to support petitioner's assertions that he was not the leader of the group and was asleep due to substantial alcohol consumption during the commission of the murder, and (2) whether the absence of that information at trial prejudiced petitioner. There is no question that petitioner has information regarding his leadership abilities, his learning abilities, and his alcohol use. Whether or not he communicated this information to trial counsel is important; it is also important to determine whether any of the information would have made a difference to the jury's guilt phase determination. For these reasons, the court finds it appropriate for respondent to question petitioner regarding petitioner's "leadership qualities, learning abilities, and alcohol use insofar as they affect the guilt phase." All respondent's questions are, of course, further restricted to the "subject matter" of petitioner's claims that will be the subject of the evidentiary hearing. Fed. R. Civ. P. 26(b)(1).

II. Conditions of Deposition

    A. Preparing Petitioner for Deposition

It is reasonable for petitioner's counsel to prepare petitioner for the deposition. Respondent does not object to this request. Petitioner asks that his counsel be permitted to bring with them necessary materials for preparation including documents, video and audio tapes and equipment, binders, and laptop computers. The court finds these items reasonably necessary to prepare petitioner for his deposition. Petitioner's counsel shall inform the court if he requires more specific authorization to bring these items into San Quentin.

/////

/////

1      B. Scheduling Deposition to Obtain Court Rulings on Objections

2           As described below, the court finds a protective order appropriate to limit access
3  to the information gained through the deposition.  The protective order should allay some of
4  petitioner's concerns about the release of sensitive information and thus should avoid the
5  necessity of resolving many objections during the course of the deposition.  Counsel is reminded
6  that the Federal Rules specify that objections are noted for the record, and the testimony is taken
7  subject to any objections.  Fed. R. Civ. P. 30(c)(2).  However, the court is willing to make itself
8  reasonably available for telephone conferences to resolve objections if necessary.  When
9  scheduling petitioner's deposition, if counsel wishes the court to be available generally,
10 respondent's counsel shall contact the courtroom clerk to determine the availability of the
11 undersigned on the proposed deposition date.

12     C. Method of Recording Deposition

13          Petitioner seeks recording of the deposition by both audio-visual and stenographic
14 means.  Respondent states only that since he is required to pay for the deposition, he should
15 determine the method of recording.  Respondent does not, however, specify what method(s) he
16 intends to use.  This court has the right to specify the method of recording the deposition.  Fed.
17 R. Civ. P. 30(b)(3)(A).  The court finds audio-visual recording is necessary given the sensitive
18 nature of this deposition.

19     D. Protective Order

20          The parties appear to agree that the protective order previously entered on
21 November 24, 2003 is sufficient to cover petitioner's deposition.  (Dkt. No. 128.)  The protective
22 order limits disclosure of covered material to "counsel for the State and persons working under
23 their direct supervision." Respondent seeks the right to share information from petitioner's
24 deposition with members of petitioner's trial defense team.  Petitioner objects, citing Federal
25 Rule of Evidence 615, which excludes trial witnesses from hearing the testimony of other trial
26 witnesses.   Petitioner's attempt to apply this evidentiary rule to a deposition is not well taken.

1   The discovery rules specifically state that Rule 615 does not apply to a discovery deposition.
2   Fed. R. Civ. P. 30(c)(1) ("The examination and cross-examination of a deponent proceed as they
3   would at trial under the Federal Rules of Evidence, except Rules 103 and 615.").

4       The general purpose of the civil discovery rules is to remove surprise from trial
5   preparation. Burgess v. Wm. Bolthouse Farms Inc., No. 08-CV-1287 LJO GSA, 2009 WL
6   4810170 at * 3 (E.D. Cal. Dec. 8, 2009). Respondent should have the opportunity to discuss
7   information gained through discovery with relevant witnesses. Because petitioner has not
8   provided a reason to rule otherwise, this court finds respondent may share information gained
9   through petitioner's deposition with petitioner's trial counsel. Trial counsel are, of course,
10  subject to the terms of the November 24, 2003 protective order.

11      E. <u>Petitioner's Ability to Consult with Counsel</u>

12      Petitioner seeks the ability to consult with counsel at the request of either
13  petitioner or his counsel. Respondent objects citing Rule 30(c)(1), which specifies that
14  examination should proceed as it would at trial. However, Rule 30(c)(2) does permit counsel to
15  instruct his client not to answer "when necessary to preserve a privilege, to enforce a limitation
16  ordered by the court, or to present a motion under Rule 30(d)(3)." In addition, the Advisory
17  Committee Note to Rule 6 recognizes that the deposition of a petitioner, who could not be called
18  to testify against himself at a criminal trial, is permissible due to petitioner's rights under the
19  Fifth Amendment and the presence of counsel. Due to the potential for revelation of information
20  that may be privileged or protected by the Fifth Amendment, this court liberally construes Rule
21  30 with respect to the deposition of petitioner. Petitioner will be entitled to consult with counsel
22  on a limited basis. However, if these consultations are too frequent or amount to "coaching,"
23  respondent may seek this court's intervention.

24     F. <u>Shackling</u>

25      As petitioner points out, respondent has at his disposal information from
26  petitioner's prison records or the warden on petitioner's potential dangerousness in the deposition

setting. Respondent has provided no support for his statement that petitioner's request to be unshackled is "unconventional" and no grounds for requiring petitioner be shackled during the course of his deposition. Accordingly, this court will not order shackling.

G. Payment of Deposition Expenses

Respondent shall pay the costs of both audio-visual and stenographic recording of his deposition of petitioner and the costs of the original transcript. Fed. R. Civ. P. 30(b)(3). In addition, respondent shall pay the travel expenses, subsistence expenses, and fees of petitioner's CJA attorney to attend the deposition. Rule 6, Rules Governing Section 2254 Cases.

III. Likely Objections to Deposition Questions

A. Fifth Amendment Privilege

Petitioner does not seek blanket application of the privilege. He asks that this court be available to rule on objections that may arise during the deposition. As stated above, the court will make every attempt to be available as needed if the deposition is scheduled in consideration of the court's schedule. However, in an attempt to limit the necessity of such rulings, which would necessarily delay completion of the deposition, the court sets out the state of the law on assertions of the Fifth Amendment privilege during the course of a deposition of a petitioner taken in a habeas corpus proceeding.

Few courts appear to have considered this issue. Nonetheless, the outline of the Fifth Amendment right is fairly clear.

> The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The protection precludes an individual from being called involuntarily as a witness in a criminal prosecution and "also privileges him not to answer official questions put to him in any other proceeding ... where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) (citing McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924)). Thus, "the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." Application of Gault, 387 U.S. 1, 49, 87 S.Ct.

1428, 18 L.Ed.2d 527 (1967). The privilege is available for answers "that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Thus, Petitioner is correct that the privilege is potentially applicable in a habeas proceeding that could result in a new trial or sentencing.

Detrich v. Schriro. No. CV 03-229-TUC-DCB, 2007 WL 177831 at * 2 (D. Ariz. Jan. 23, 2007). The Advisory Committee Note to Rule 6, Rules Governing Section 2254 Cases, reflects a similar understanding that petitioner may be protected by the Fifth Amendment privilege during a deposition: "Although the petitioner could not be called to testify against his will in a criminal trial, it is felt the nature of the habeas proceeding, along with the safeguards accorded by the Fifth Amendment and the presence of counsel, justify this provision."

The next question is whether petitioner's assertion of the privilege may be freely given or whether, as respondent contends, petitioner may suffer an adverse consequence as a result of asserting the privilege. Courts who have examined this issue have fairly uniformly held that an adverse inference from an assertion of the privilege may be appropriate:

> Finally, Petitioner requests that the Court not draw an adverse inference from Petitioner's decision to remain silent at the evidentiary hearing; however, Petitioner did not provide any factual or legal argument in support of this request. It is the prevailing rule "that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify." Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). The Court has not identified any cases in which a court excepted a habeas petitioner from that rule; to the contrary, the limited cases on point find application of an adverse inference appropriate. See Bean, 166 F.R.D. at 454-56; State ex rel. Myers v. Sanders, 206 W. Va. 544, 526 S.E.2d 320, 326 (W. Va.1999); Lott v. Bradshaw, No. 1:04-CV-822, 2005 WL 3741492, *10 (N.D. Ohio March 29, 2005). If Petitioner asserts a Fifth Amendment privilege at the evidentiary hearing the Court may draw an adverse inference in this habeas proceeding from that assertion.

Detrich, at * 3. Again, this question must be decided on a case-by-case basis. One factor the court is likely to consider is respondent's ability to obtain information from another source. On

the other hand, because this court agrees that a protective order is appropriate for any record made of petitioner's deposition testimony, there may be less need for assertion of the privilege. Without prejudging any future determination regarding petitioner's deposition testimony, the existence of the protective order may also make it more likely this court will draw a negative inference from petitioner's refusal to answer a question that could provide respondent with information necessary to respond to petitioner's evidentiary hearing claims.

B. Attorney/Client Privilege

The court does not anticipate objections based on this privilege. The protective order should protect petitioner's limited waiver of the attorney/client privilege. Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003).

IT IS SO ORDERED.

DATED: May 4, 2010.

_____
U.S. MAGISTRATE JUDGE

riel pdepo.or2