IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES D. RIEL,

      Petitioner,               No. CIV S-01-0507 LKK KJM

    vs.                          DEATH PENALTY CASE

ROBERT L. AYERS, Jr.,
Warden of San Quentin
State Prison,

      Respondent.            ORDER

_____/

        Respondent's motion to have his rebuttal expert, Dr. Dunn, conduct a mental examination of petitioner came on for hearing April 14, 2010. Paul Bernardino and Heather Gimle appeared for respondent. Tivon Schardl and Robert Bacon appeared for petitioner. Upon review of the motion and the documents in support and opposition, including petitioner's April 28 response to respondent's reply, upon hearing the arguments of counsel and good cause appearing therefor, the court finds and orders as follows.

/////

/////

1

I. Rule 35 Standards[1]

The standards for determining whether or not to permit a mental exam are found in Rule 35 of the Federal Rules of Civil Procedure. Rule 35 provides that the court may, for good cause shown, order a physical or mental exam by a "suitably licensed or certified examiner" of a party whose physical or mental condition is "in controversy." Fed. R. Civ. P. 35(a)(1), (2). Good cause is also required for discovery in a habeas proceeding. Rule 6, Rules Governing Section 2254 Cases. See Bracy v. Gramley, 520 U.S. 899, 904 (1997) ("habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course"). The Court in Bracy held that a party seeking discovery must make "specific allegations" showing reason to believe he could prevail on the merits if the facts are more fully developed. Id. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 295 (1969)).

/////
/////
/////
/////
/////
/////
/////
/////

---

[1] Petitioner argues strenuously that the court should treat respondent's motion as a motion for reconsideration under Local Rule 230(j). In the February 17, 2010 order, this court permitted respondent to "renew" his motion; it did not tell respondent it would only "reconsider" the prior motion based on new facts or circumstances under Rule 230(j), so petitioner's argument comes too late. Further, this court will not force respondent to show just what new information he relied upon when it was petitioner's delayed production of documents that deprived respondent of time to confer with his expert Dr. Dunn. Indeed, despite being ordered to produce all Dr. Froming's records, petitioner informed the court during the August 14 hearing that some notes were not turned over to opposing counsel until that day, further depriving respondent of the opportunity to fully support his motion.

The primary case regarding the scope of Rule 35 is Schlagenhauf v. Holder, 379 U.S. 104 (1964). There, the Supreme Court stated:

> The courts of appeals in other cases have also recognized that Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule. This is obviously true as to the 'in controversy' and 'good cause' requirements of Rule 35. They are not met by mere conclusory allegations of the pleadings-nor by mere relevance to the case-but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

379 U.S. at 118. Relying on Schlagenhauf, federal courts have held that the party seeking a mental health exam must show both that the proposed examinee's mental health is "in controversy" and that there is "good cause" for the examination requested. A few courts, without explanation, elide the "in controversy" and "good cause" requirements by granting a Rule 35 request where mental or physical health is a significant issue in the case. See, e.g., Regan v. Trinity Distribution Services, Inc., 251 F.R.D. 108, 110 (W.D. N.Y. 2008); Nuskey v. Lambright, 251 F.R.D. 3, 6 (D. D.C. 2008); Benham v. Rice, 238 F.R.D. 15 (D. D.C. 2006); Bethel v. Dixie Homecrafters, Inc., 192 F.R.D. 320, 322 (N.D. Ga. 2000).[2] While recognizing the two requirements "are necessarily related," the Court in Schlagenhauf made clear that showing "good cause" requires more than just showing that mental health is "in controversy." The movant must show good cause exists "for each particular examination" and requires the court to consider the movant's ability to obtain the information by other means. 379 U.S. at 118. It is important to note that the present case is a habeas case, unlike almost every Rule 35 case cited by the parties

---

[2] Many of the cases merging the requirements involve the question of a personal injury or employment discrimination plaintiff's claim for damages for emotional distress. They focus on attempts to determine just when that claimed emotional distress amounts to a mental health issue for which a Rule 35 examination is proper. The mental exams sought in the present case are significantly different. They seek to determine petitioner's mental condition over twenty years ago.

and uncovered by this court's research. A party seeking discovery in a habeas case must show good cause, unlike parties in other civil cases. Rule 6, Rules Governing Section 2254 Cases. The Rule's good cause requirement reinforces the good cause requirement of <u>Schlagenhauf</u> as applicable to this case.

Respondent cites a five-factor test described by the district court in <u>Ford v. Contra Costa County</u>, 179 F.R.D. 579, 580 (N.D. Cal. 1998). He argues that if one or more of the factors described in <u>Ford</u> is present, then a mental examination is appropriate under Rule 35 and <u>Schlagenhauf</u>. Respondent misreads <u>Ford</u>. The court in <u>Ford</u> considered only whether the plaintiff in that case had placed her mental condition in controversy. After recognizing that Rule 35 and <u>Schlagenhauf</u> require a showing that "(1) the adverse party's mental condition is in controversy, and (2) there is good cause for the examination," 179 F.R.D. at 579, the court went on to consider the first issue:

> Although the Ninth Circuit has yet to answer this precise question, the bulk of the reported case law demonstrates that a claim for emotional distress damages, by itself, is not sufficient to place the plaintiff's mental condition in controversy for purposes of FRCP 35(a). Courts generally require the party seeking to compel the evaluation to establish an additional element. As the *Turner* court illustrated, the movant must also demonstrate that (1) the plaintiff has pled a cause of action for intentional or negligent infliction of emotional distress; (2) the plaintiff has alleged a specific mental or psychiatric injury; (3) the plaintiff has pled a claim for unusually severe emotional distress; (4) the plaintiff plans to offer expert testimony to support a claim of emotional distress and/or (5) the plaintiff has conceded that his or her mental condition is "in controversy" for purposes of FRCP 35(a).

179 F.R.D. at 579-80 (citing <u>Turner v. Imperial Stores</u>, 161 F.R.D. 89, 92-97 (S.D.Cal.1995)). Because the <u>Ford</u> court found the plaintiff had not placed her mental state in controversy, it did not need to reach the question of good cause.

There is no question in the present case that petitioner's mental condition in 1986 and 1988, the years of the crime and trial, are in controversy. The issue is whether respondent has shown good cause to conduct a mental health examination. What amounts to good cause is

4

not perfectly clear. Most cases consider Rule 35 requests to examine plaintiffs alleging mental distress as a result of some action of the defendants. Thus, factually, they are not particularly applicable here. However, this court discerns from those cases a number of factors to be considered in determining good cause under Rule 35 in this case. Each factor is examined below.

### A. Leveling the Playing Field

Many district courts have ordered a Rule 35 examination because the other party, usually the plaintiff, intends to present expert testimony on the health issue. For example, in Simpson v. University of Colorado, 220 F.R.D. 354, 362 (D. Colo. 2004), the court relied only upon the plaintiff's concession "that she has placed her mental health 'in controversy' by claiming a specific psychiatric condition, Post-Traumatic Stress Disorder," and upon the plaintiff's stated "intention to present expert testimony at trial concerning her alleged emotional injuries."[3] The court also noted, without discussion, that allowing the defendant to cross-examine the plaintiff's expert was not sufficient to allow the defendant adequately to scrutinize the opinions of the plaintiff's expert. Id. at 362-63 (citing Greenhorn v. Marriott Intern., Inc., 216 F.R.D. 649, 652 (D. Kan. 2003); Fischer v. Coastal Towing Inc., 168 F.R.D. 199, 201 (E.D. Tex. 1996); Eckman v. University of Rhode Island, 160 F.R.D. 431, 434 (D. R.I. 1995)). See also Bethel, 192 F.R.D. at 322; Duncan v. Upjohn Co., 155 F.R.D. 23, 25 (D. Conn.1994); Tomlin v. Holecek, 150 F.R.D. 628, 632 (D. Minn. 1993). While most court opinions relying on the inadequacy of cross-examination do not describe why cross-examination is insufficient, in Womack v. Stevens Transport, Inc., 205 F.R.D. 445, 447 (E.D. Pa. 2001), the court asserts that the "promulgators of Rule 35 deemed that the opportunity to cross-examine was an 'insufficient test of truth.'" The Womack court cites Tomlin for this history of Rule 35. However, a review

---

[3] At least one court relied on the absence, rather than the presence, of the plaintiff's expert witness. In Nuskey, the district court found the defendant's Rule 35 request justified because there was no other scientific evidence of the plaintiff's mental distress. 251 F.R.D. at 6.

of Tomlin shows that the court was simply inferring the intent behind Rule 35. 150 F.R.D. at 632.[4] Given the Supreme Court's requirement that courts consider whether the information sought through a mental exam may be available by other means, it is hard to imagine that cross-examination should in every case be considered an "insufficient test of truth." Schlagenhauf, 379 U.S. at 118.

### B. Exams Inappropriate for Past Conditions

Many courts have relied upon the continuing nature of the alleged injuries to determine whether or not a party has shown good cause for a Rule 35 exam. See Kunstler v. City of New York, 242 F.R.D. 261, 263 (S.D. N.Y. 2007) (no claim that mental health problems were continuing, so no good cause for Rule 35 exam); McLaughlin v. Atlantic City, Civil No. 05-2263 (RMB), 2007 WL 1108527 (D. N.J. Apr. 10, 2007); Doe v. District of Columbia, 229 F.R.D. 24, 27-28 (D. D.C. 2005); Womack, 205 F.R.D. at 447; Duncan, 155 F.R.D. at 25 (good cause found where plaintiff alleged ongoing injury and intended to present expert testimony). Cf. Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres, 255 F.2d 149 (1st Cir. 1958) (prior to Schlagenhauf, court finds exam would be useless because plaintiff had recovered from his injuries). In McLaughlin, the plaintiff brought a claim of excessive force by a police officer. The plaintiff sought a Rule 35 examination of the police officer's mental condition. The plaintiff relied upon psychiatric and psychological records he had obtained through discovery from medical professionals who had treated or evaluated the police officer around the relevant time period to show a legitimate concern with the officer's mental health. The court found there was "no serious question" that the officer's mental condition was in controversy. 2007 WL 1108527 at *3. However, the court found the plaintiff had failed to show good cause for the examination because: (1) there was no credible evidence that a 2007 exam was relevant to the officer's mental status at the time of the 2003 incident; (2) the conclusory statement by plaintiff's expert

---

[4] The Tomlin court cites no authority for its assertion. The Advisory Committee Notes to Rule 35 do not mention the sufficiency of cross-examination.

that a "current psychiatric examination . . . is necessary" was not enough; (3) the fact that other medical professionals may differ is not enough because it could be due to changes in the officer's condition or just differences of opinion; (4) the plaintiff could probe the adequacy of these doctors' opinions through interrogatories and depositions; and (5) Rule 35 does not permit "fishing expeditions." Id.

In Doe, the district court relied upon the ongoing nature of the alleged injury to find good cause for the Rule 35 exam. 229 F.R.D. at 27. In addition, the court considered the defendant's showing that the "mental examinations already performed . . . are not sufficient for defendant to ascertain the nature and extent of the injuries that resulted from the incidents alleged in this litigation." Id. The court considered each of the several prior examinations of the plaintiff. The court found that each "appears to be an incomplete snapshot" of the plaintiff's injuries. Id. In addition, the court found plaintiff's medical records and depositions "do not contain a thorough assessment of his current mental and emotional condition." Id.

In a case in this district, a District Judge has surmised that it was possible the "in controversy" requirement is limited to issues regarding the potential examinee's current mental state. Holt v. Ayers, No. CIV F-97-6210-AWI, 2006 WL 2506773 at *5 (E.D. Cal. Aug. 29, 2006). The judge went on to deny without prejudice the respondent's Rule 35 request. Id. at *8. He informed the respondent that any renewed motion must "persuade the Court that the 'in controversy' requirement of Rule 35(a) extends beyond a party's current mental condition." Id. at *7.

Whether considered as part of the "in controversy" or "good cause" requirements, it is clear that respondent must show how the current examinations he seeks will demonstrate petitioner's mental state in the late 1980s.

C. Necessity of Exam

Good cause requires a showing that each exam sought "could adduce specific facts relevant to the cause of action and is necessary to the defendant's case." Womack, 205

7

1  F.R.D. at 447 (court finds exam is the only way to determine the "present psychological state" of
2  plaintiff).  In Pearson v. Norfolk-Southern Ry. Co., Inc., 178 F.R.D. 580, 582 (M.D. Ala. 1998),
3  the court explained that the moving party must demonstrate the examination is necessary by
4  showing that the information it seeks is not available by other means.  The court held that the
5  defendant had ample information on the plaintiff's intellectual functioning at the time of the
6  accident through discovered court records, school records, and "copies of all social, medical,
7  psychiatric, psychological testing and evaluations."  See also McLaughlin, 2007 WL 1108527 at
8  *3 ("plaintiff could probe the adequacy of these doctors' opinions through interrogatories and
9  depositions"); Shumaker v. West, 196 F.R.D. 454, 457 (S.D. W. Va. 2000) (ample evidence of
10 plaintiff's PTSD available to defendant; no good cause for Rule 35 exam); Marroni v. Matey, 82
11 F.R.D. 371, 372 (E.D. Pa. 1979) (less intrusive discovery methods must be tried first).
12         Where other discovery methods have been permitted, a party may still show good
13 cause for a Rule 35 examination by establishing that questions remain regarding the cause or
14 nature of injuries.  In Bethel, the defendants had obtained all the plaintiff's medical records and
15 had deposed seven of the plaintiff's health care providers.  192 F.R.D. at 323.  The court found
16 good cause for a Rule 35 mental health exam because the defendants showed that questions
17 remained whether the plaintiff's mental health problems resulted from defendant's actions or
18 from other life events, including four marriages and divorces, abuse by a spouse, drug
19 rehabilitation treatment, and a cancer diagnosis.  Id.  Similarly, in Anson v. Fickel, 110 F.R.D.
20 184, 186 (N.D. Ind. 1986) (citations omitted), the court found good cause for the Rule 35 exam
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

because the defendant's experts had formed preliminary opinions adverse to plaintiff's claimed injury:

> One of the factors which must be considered in determining good cause is whether the defendants have utilized other discovery procedures before seeking the mental examination. In this case, the defendants have done so. They have alleged that Dr. Madsen and George M. Gentry, Ph.D., a clinical psychologist licensed to practice in Indiana and Illinois, have reviewed the medical records of the plaintiff and have formed preliminary opinions concerning the plaintiff's mental condition which are adverse to the claims of the plaintiff. Since the defendants already have obtained the medical records of the plaintiff and have had these records reviewed by their own experts, the defendants have demonstrated a reasonable basis for requesting the mental examination of the plaintiff.

See also O'Sullivan v. Rivera, 229 F.R.D. 184, 186 (D. N.M. 2004) ("Given the possible inadequacy of what [plaintiff's doctor] has done in the past for determining O'Sullivan's present condition, the Defendants may not be able to get the needed information by any other means except another medical examination by an alternative physician."); Doe, 229 F.R.D. at 27-28 (good cause found where defendant shows questions about cause of plaintiff's injury remain after review of prior medical exams, medical records, and depositions).

The party seeking an exam must demonstrate why the other discovery is inadequate.

> Defendant has made no showing of why the deposition testimony of [plaintiff's doctors], as well as the reports prepared by them, cannot be evaluated by [defendant's expert] as a means of preparing a defense to the testimony of those doctors. The court recognizes that this alternative to an independent evaluation by [defendant's expert] may be insufficient. But defendant has the burden of producing evidence to satisfy the court that the mental examination is necessary and that the desired information cannot be otherwise obtained.

Valita M. v. City of Chicago, No. 83 C 3745, 1986 WL 8736 at *2 (N.D. Ill. Aug. 1, 1986).

II. Analysis

The cases cited above yield the conclusion that respondent in the present case must do more than make conclusory allegations of the relevance of a mental health exam of

petitioner to establish good cause. Further, respondent's showing of good cause is circumscribed by his identification of Dr. Dunn as a rebuttal witness to Dr. Froming. Dr. Dunn's testimony is limited to rebutting the findings and conclusions of Dr. Froming. Respondent must show: (1) how the tests Dr. Dunn seeks to conduct will provide information relevant to petitioner's mental health in 1986 and 1988; (2) how Dr. Dunn's examination will produce information that will rebut information provided by Dr. Froming; (3) that Dr. Dunn's examination is necessary to respondent's case; and (4) that Dr. Dunn cannot obtain this information in any other way. These requirements should come as no surprise to respondent. When the court denied without prejudice respondent's prior Rule 35 motion, the court explained some of what was missing from respondent's motion: "Respondent has failed to show with specificity what aspects of Dr. Froming's findings his expert seeks to rebut, how the testing proposed will rebut Dr. Froming's findings, how long the testing would take, and how the results of the proposed testing would be relevant to petitioner's evidentiary hearing claims." Feb. 17, 2010 Order at 4. The court further informed respondent that in any renewed motion he "should, if necessary, address the issues of the relevance to petitioner's claims of both using current testing methods and measuring petitioner's current mental status." Id. at 4 n.4.

Against this backdrop, respondent makes little more than a basic "level the playing field" argument: because petitioner's expert had the opportunity to examine petitioner, respondent's expert should have the right to do so as well. See, e.g., Resp't's Mar. 26, 2010 Mot. to Conduct Mental Exam. at 5. This is not enough. Respondent must have provided some reason to think that Dr. Dunn's examination will provide results that are different than Dr. Froming's. Respondent does discuss two areas in which he appears to argue Dr. Froming's methodology was deficient. First, respondent argues that Dr. Froming's conclusions regarding effort and the absence of malingering are not supported by the raw data. As mentioned above, petitioner's counsel told the court he had provided that data – a total of a few pages – to respondent's counsel on the day of the argument on respondent's renewed motion. If respondent

feels this raw data does not support Dr. Froming's conclusions regarding effort and malingering, he may raise these issues during cross-examination of Dr. Froming.  Respondent has not shown how effort and malingering tests conducted over ten years after Dr. Froming conducted her tests would rebut any of Dr. Froming's conclusions.[5]

> Regarding the proposed administration of objective psychological tests, the petitioner and his expert, Dr. Miora, has [sic] made an issue regarding the administration of these objective psychological tests in my examination.  These tests are the MMPI-2, the MCMI-III, and the PPI-R.  The purpose of administering these tests is straight forward.  Neuropsychological tests are not diagnostic of brain damage.  Suggested impairments found on neuropsychological test results may be due to brain damage, or may be due to other factors, such as psychopathology (e.g., depression, psychosis, personality disorders).  Attributing suggested impairment from neuropsychological test results to brain damage is an inference made by the psychologist or neuropsychologist after these other "confounding" factors are ruled out.  Administering these objective psychological tests to Mr. Riel provides me with objective clinical data regarding the presence (or absence) of psychopathology that may be negatively affecting his neuropsychological test performances.

Respondent's second argument is that Dr. Froming did not conduct "objective psychological tests," which, according to Dr. Dunn, are necessary to determine whether there are other factors that may contribute to the impairments found by Dr. Froming's neuropsychological tests:

Mar. 26, 2010 Decl. of John T. Dunn, Ph.D. ¶ 11, Ex. A to Resp't's Mar. 26, 2010 Mot. to Conduct Mental Health Exam.  Petitioner has a number of valid arguments in response to this assertion.  First, Dr. Froming states that the results of any personality testing Dr. Dunn proposes would be irrelevant because the literature relating some personality disorders to neuropsychological impairment post-dates the trial.  Apr. 8, 2010 Decl. of Karen B. Froming,

---

[5] Respondent's briefing and argument on this issue are not entirely clear.  It is not apparent to the court whether Dr. Dunn intended to conduct effort and malingering tests along with his other tests for the purpose of determining petitioner's effort during the time of Dr. Dunn's testing or whether Dr. Dunn intended to conduct effort and malingering tests to somehow determine petitioner's effort during Dr. Froming's testing.  The court agrees with petitioner that the latter basis for the tests is not viable.

Ph.D. ¶ 1, attached to Pet'r's Apr. 9, 2010 Opp'n to Mot.  Respondent does not contest this, except to point out that the manual for the battery of tests conducted by Dr. Froming does mention that the MMPI is "frequently administered . . . to provide information regarding any emotional distress or personality disturbance the patient may be experiencing."  Apr. 12, 2010 Decl. of John T. Dunn, Ph.D. ¶ 4, attached to Resp't's Apr. 12, 2010 Reply to Opp'n.  Respondent does not make clear, however, how he intends to use these "objective psychological tests."  To the extent they are meant to show petitioner's mental state at trial, respondent has not shown why the MMPI conducted by Dr. Edwards at the time of trial is insufficient, why the other two tests are necessary if they could not or would not have been administered at the time of trial, and how current testing would be relevant to petitioner's mental condition in the late 1980's.  To the extent they are meant to show how well petitioner performed during Dr. Froming's testing, respondent has not shown how current testing would be relevant to petitioner's mental state during her testing in 1999.  See Apr. 9, 2010 Decl. of Deborah S. Miora, Ph.D.  ¶ 8, attached to Pet'r's Apr. 9, 2010 Opp'n ("a measure of psychopathology administered today may not accurately represent an individual's mental condition(s) 10 or 20 years ago").  Further, to the extent respondent argues Dr. Froming's conclusions are deficient because she failed to perform objective psychological tests, he has not shown why he requires his own testing and why respondent's cross-examination of Dr. Froming will not be sufficient.

Respondent has had the opportunity to show that petitioner's medical and mental health records and/or Dr. Froming's raw test data do not support her conclusions.  He has had the opportunity to depose not only Dr. Froming, whose 1999 report has been available to respondent since the time it was prepared, but petitioner's other mental health experts and others who may have information about petitioner's mental health.  He has also had the opportunity to show how current testing of petitioner would be relevant to either rebut Dr. Froming's 1999 tests or to show

petitioner's mental state in the late 1980s.[6]  See Holt v. Ayers, No. CIV F-97-6210-AWI, 2006 WL 2506773 at *6 (E.D. Cal. Aug. 29, 2006) (court notes it "is unaware of any case, published or unpublished, in which a mental examination under Rule 35(a) was authorized to uncover mental states from the past."); cf. Williams v. Woodford, 384 F.3d 567, 608 (9th Cir. 2004) (retrospective competency determinations disfavored); Moran v. Godinez, 57 F.3d 690, 696 (9th Cir. 1995) (superseded on other grounds by AEDPA; retrospective competency determinations disfavored but permissible if passage of time not great and contemporaneous medical reports available); McMurtrey v. Ryan, 539 F.3d 1112, 1131 (9th Cir. 2008) (same).  Respondent's argument that because Dr. Froming used some tests and some normative data that were not available at trial means his expert should be able to do the same misses the point.  If Dr. Froming used less-than-perfect testing methods, respondent can cross-examine her about them.  Dr. Froming's use of those methods does not mean respondent is automatically justified in doing the same.  Despite the opportunity to do so, respondent has failed to meet his burden of showing good cause under Rule 35 and Habeas Rule 6.[7]

Accordingly, IT IS HEREBY ORDERED that respondent's March 26, 2010 Motion to Conduct Mental Health Examination of Petitioner is denied.

DATED:  May 17, 2010.

_____
U.S. MAGISTRATE JUDGE

riel mtn for mental exam.or2

---

[6] Respondent's argument that petitioner's expert concluded petitioner has "permanent brain damage" is not supported.  Dr. Froming does not identify petitioner's brain damage as permanent or immutable.  1999 Decl. of Karen Bronk Froming, Ph.D., App. 2 to Pet'r's Feb. 22, 2005 Mot. for Evid. Hrg.  Respondent's own expert Dr. Dunn does not characterize Dr. Froming's finding of brain damage as being permanent.  Jan. 11, Feb. 3, Mar. 26, and Apr. 12, 2010 Decls. of John T. Dunn, Ph.D., exhibits to Resp't's Mar. 26, 2010 Mot., Feb. 3, 2010 Reply, and Apr. 12, 2010 Reply.

[7] Because the court finds respondent has not shown good cause for the exam, it need not reach petitioner's arguments regarding Dr. Dunn's qualifications and the nature of rebuttal testimony.