1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                      EASTERN DISTRICT OF CALIFORNIA
10
11   CHARLES D. RIEL,
                                      NO. CIV. S-01-0507 LKK/KJM
12
             Petitioner,            DEATH PENALTY CASE
13
         v.
14
     ROBERT L. AYERS, JR.,           O R D E R
15   Warden of California State
     Prison at San Quentin,
16
             Respondent.
17   _____/

18       Petitioner is before the court on a petition for habeas corpus

19   under 28 U.S.C. § 2254, seeking relief from his state-court

20   conviction and sentence of death. Petitioner has filed a motion to

21   reconsider the magistrate judge's May 17, 2010 order concerning the

22   procedure and substantive standard for determining when it is

23   necessary to seal portions of the evidentiary hearing in order to

24   protect petitioner's attorney-client privilege. Order, ECF No. 354.

25                        **I. Background**

26       Petitioner filed a federal habeas petition on March 29, 2002

     after exhausting state remedies. Petitioner's primary claims are

ineffective assistance of counsel during the guilt and penalty phases, and jury reliance on false evidence. This court ordered an evidentiary hearing on issues raised in those claims, and referred the matter back to the magistrate. Order, March 27, 2009, ECF No. 212. The magistrate then instructed the parties to inform the court if they wished to propose an alternative to the to the procedure for sealing portions of the evidentiary hearing ordered in Osband v. Ayers, CIV S 97-0152. Order, April 29, 2009, ECF No. 222. After briefing from the parties, the magistrate declined to depart from the standard from Osband for determining which portions of the evidentiary record should be sealed, and required petitioner to file a brief "describing any potential evidentiary hearing testimony he feels should be taken in a closed courtroom and just how the testimony meets the standards set out in Osband." Order, May 17, 2009, ECF No. 354. Petitioner filed a request for reconsideration of the magistrate's order. The date for the evidentiary hearing has been vacated pending resolution of the issues raised in petitioner's request for reconsideration.

## II. Standard of Review

A district judge reviewing a nondispositive order of a magistrate judge must "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. Proc. 72(a); 28 U.S.C. 636 (b)(1)(A). The court reviews *de novo* the question of whether the magistrate's order is contrary to law. *Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002). In this case, the magistrate's May 17, 2010 order is contrary to the

1 Ninth Circuit's holding in <u>Bittaker v. Woodford</u>, 331 F.3d 715

2 (9th Cir. 2003), and must be modified.

### III. Analysis

4       The <u>Osband</u> test adopted by the magistrate required

5 petitioner to show that information sought to be sealed is

6 covered by the attorney-client privilege or work-product

7 protection, and that the petitioner may suffer prejudice upon

8 retrial if the information is made public. Petitioner can show

9 that he may suffer prejudice by showing "(a) the relevance of

10 the information he seeks to seal to an issue which may be raised

11 on re-trial, (b) the likelihood that the issue may be raised on

12 retrial, and (c) the prejudice he could suffer should that

13 information be revealed." Osband Order, June 13, 2008, ECF No.

14 513. Procedurally, the magistrate in <u>Osband</u> first directed the

15 parties to "cluster questions that might bring out protected

16 information, make an off the record proffer showing what

17 protected evidence might be adduced, and show a compelling need

18 to close that portion of the hearing." The magistrate later

19 abandoned this approach, because of the difficulty of predicting

20 which answers would contain protected information, and because

21 it disrupted the natural flow of questions. Osband Order,

22 October 22, 2007, ECF No. 452. The magistrate then ordered the

23 hearing closed and temporarily sealed the transcript during

24 testimony of the petitioner's trial counsel and a jury

25 consultant. After the conclusion of the hearing, the magistrate

26 directed the petitioner to file a statement identifying the

1    portions of the transcript that should remain under seal, and

2    explaining how it met the test announced previously for showing

3    likelihood of prejudice. Osband Order, June 13, 2008, ECF No.

4    513. Respondents were given twenty days to file a responsive

5    statement, and petitioner had the opportunity to file a reply.

6    The magistrate would then designate those portions of the final

7    transcript to remain under seal, and issue a protective order.

8    The district court judge affirmed the magistrate's procedure,

9    and further ordered that the sealed portions of the record

10   remain sealed until the district court had an opportunity to

11   review the magistrate's final unsealing order. Osband Order,

12   January 30, 2009, ECF No. 529.

13       Petitioner here argues that the magistrate has adopted the

14   substantive standard from <u>Osband</u> but has prescribed a procedure

15   similar to the one discarded as "unworkable" in <u>Osband</u>—a

16   procedure that would require petitioner to predict any testimony

17   that should take place in a closed courtroom in order to avoid

18   unfair prejudice on retrial. Petitioner argues that both the

19   substantive and procedural requirements of the magistrate's

20   order do not adequately protect his attorney-client privilege

21   and are inconsistent with the Ninth Circuit's narrow waiver rule

22   in <u>Bittaker v. Woodford</u>, 331 F.3d 715 (9th Cir., 2003). This

23   court agrees.

24   **A. <u>Bittaker</u>'s narrow waiver rule applies to privileged**

25   **information disclosed throughout litigation of a habeas claim.**

26       In <u>Bittaker</u>, the Ninth Circuit addressed the question of

4

1   "the scope of the habeas petitioner's waiver [of attorney-client

2   privilege, i.e. d]oes it extend only to litigation of the

3   federal habeas petition, or is the attorney-client privilege

4   waived for all time and for all purposes–including the possible

5   retrial of the petitioner?" 331 F.3d 715, 717 (9th Cir. 2003).

6   The court adopted a narrow waiver rule, holding that the waiver

7   implied when a petitioner asserts an ineffective assistance of

8   counsel claim is limited only to the litigation of the habeas

9   claim. The court affirmed the district court's use of a

10  protective order precluding the use of privileged materials

11  turned over during discovery for any purpose other than

12  litigating the habeas claim. Bittaker directed district courts

13  to "ensure that the party given such access [to privileged

14  materials] does not disclose these materials, except to the

15  extent necessary in the habeas proceeding, i.e., to ensure that

16  such a party's actions do not result in a rupture of the

17  privilege. Id., at 727-28.

18      The June 13, 2008 Osband order that announced the standard

19  adopted by the magistrate in this case stated that Bittaker

20  addressed only the discovery question, and not the public's

21  access to trial records that contain privileged information.

22  Although the facts in the Bittaker case involved only discovery

23  documents, the language of the decision clearly contemplates

24  that the narrow waiver rule extends to privileged information

25  disclosed throughout litigation of the habeas claim. The court

26  distinguished between the waiver implied by the court when a

1  habeas petitioner brings an ineffective assistance of counsel
2  claim, and the express waiver that would result from some other
3  conduct by the petitioner. "The courts of California remain
4  free, of course, to determine whether Bittaker waived his
5  attorney-client privilege on some basis *other than* his
6  disclosure during the course of the federal litigation." Id., at
7  726 (emphasis in the original). The clear implication of this
8  distinction is that any disclosures made throughout the course
9  of federal litigation are subject to the narrow waiver rule, in
10 contrast to disclosures made outside the course of litigation,
11 which give rise to a more broad waiver. In determining the scope
12 of the implied waiver, the court again referred to litigation of
13 a habeas claim, and not only discovery. "We can think of no
14 federal interest in enlarging the scope of the waiver beyond
15 what is needed to *litigate* the claim of ineffective assistance
16 of counsel in federal court. A waiver that limits the use of
17 privileged communication to *adjudicating* the effective
18 assistance of counsel claims fully serves the federal interest."
19 Bittaker, 331 F.3d at 722 (emphasis added).

20      There is, of course, one important factor that
21 distinguishes the discovery phase from the evidentiary hearing
22 phase with respect to protection of the attorney-client
23 privilege: the public's right of access to trials, which does
24 not exist with respect to discovery documents. In this case, the
25 magistrate has issued a protective order that deemed all
26 documents produced during discovery to be confidential. The

1  order limited the use of those documents to the habeas

2  proceedings, and specifically prohibited use of the documents in

3  the event of retrial. Protective Orders, ECF Nos. 128, 263.

4  Because of the public's right of access to trials, a protective

5  order covering the evidentiary hearing will necessarily be more

6  narrow than the magistrate's discovery phase protective order.

7  The protective order covering the evidentiary hearing will only

8  protect information that is actually privileged, and the

9  petitioner has the burden of establishing the elements of the

10  privilege. <u>U.S. v. Martin</u>, 278 F.3d 998 (9th Cir. 2002).

11  However, the protective order for the evidentiary hearing phase

12  need not be so narrow as to only cover those portions of the

13  hearing that meet the <u>Osband</u> test.

14  **B. Requiring petitioner to predict in advance any testimony that**

15  **should remain under seal deprives him of the opportunity to**

16  **protect his attorney-client privilege.**

17       Central to <u>Bittaker</u>'s reasoning is the principle that the

18  privilege-holder must know the extent of the waiver in advance,

19  and have the opportunity to preserve confidentiality by

20  abandoning his claim that would give rise to a waiver, if he

21  chooses to do so. 331 F.3d at 720. The magistrate's order, which

22  requires petitioner to predict, before the evidentiary hearing

23  is held in open court, any privileged and prejudicial

24  information that might be disclosed does not give petitioner the

25  opportunity to protect his privilege. Once a statement revealing

26  privileged information that petitioner did not predict is made

1  in open court, petitioner will be "unfairly surprised in the

2  future by learning that [he] actually waived more than [he]

3  bargained for in pressing its claims," a result prohibited by

4  <u>Bittaker</u>. <u>Id.</u> Once testimony is given in open court, petitioner

5  can no longer protect his privilege even by abandoning his

6  ineffective assistance of counsel claim.

7  **C. The magistrate's requirement that petitioner show a**

8  **likelihood of prejudice if certain privileged information is**

9  **revealed is contrary to <u>Bittaker</u>.**

10      In affirming the district court's protective order covering

11  all privileged information disclosed during discovery, the

12  <u>Bittaker</u> court acknowledged that *any* use of privileged

13  information would lead to unfair prejudice against the

14  petitioner, and would give prosecutors and unfair advantage. "If

15  petitioner relies on the protective order by releasing

16  privileged materials and it turns out to be invalid, he will

17  suffer serious prejudice during any retrial." <u>Bittaker</u>, 331 F.3d

18  at 718. Similarly, use by prosecutors of privileged information

19  disclosed during a habeas proceeding would presumptively violate

20  the fairness principle that governs implied waivers in

21  ineffective assistance of counsel claims.  The court explained

22  that "allowing the prosecution at retrial to use information

23  gathered by the first defense lawyer–including defendant's

24  statements to his lawyer–would give the prosecution a wholly

25  gratuitous advantage." <u>Id.</u>, at 724.

26      The magistrate's requirement that petitioner meet the

8

1   three-part standard announced in <u>Osband</u> is contrary to the

2   presumption, expressed in <u>Bittaker</u>, that the use of *any*

3   privileged information on retrial would result in unfair

4   prejudice.

5   **D. Petitioner's interest in preventing privileged information to**

6   **be used on retrial justifies maintaining portions of the**

7   **evidentiary hearing records under seal**.

8       The <u>Osband</u> standard adopted by the magistrate is based on

9   the common law, rather than the First Amendment, standard for

10  sealing evidentiary hearing transcripts and exhibits from public

11  access. While a First Amendment right of public access to

12  criminal trials is established, <u>see e.g.</u>, <u>Globe Newspaper Co. v.</u>

13  <u>Superior Court for Norfolk County</u>, 457 U.S. 596 (1982), no such

14  right to hearing transcripts and civil cases is firmly

15  established, as noted in the <u>Osband</u> order. See, e.g. <u>Hagestad v.</u>

16  <u>Tragesser</u>, 49 F.3d 1430, 1434 (9th Cir. 1995) (noting that

17  "neither the Supreme Court nor this Circuit has ruled on the

18  issue in the context of a civil trial or records in civil

19  cases.").

20      Nonetheless, under the common law, there is a presumption

21  of public access to civil proceedings. Additionally, Local Rule

22  141.1 establishes a presumption of public access to information

23  provided to the court. "Yet the common-law right is not of

24  constitutional dimension, is not absolute, and is not entitled

25  to the same level of protection afforded constitutional rights."

26  <u>Valley Broadcasting Co. V. U.S. Dist. Court for Dist. Of Nevada</u>,

1  798 F.2d 1289, 1293 (9th Cir. 1986). The right of access must be

2  weighed with interests advanced by the parties. Among the

3  interests that would overcome the presumption of access are "the

4  likelihood of improper use, including publication of scandalous

5  ... materials" or "great public embarrassment of a third party."

6  Id. at 1294. At the weightier end of the spectrum of interests

7  that would outweigh the public's common-law right of access is

8  "a defendant's constitutional right to a fair trial," for the

9  protection of which "a court may deny access, but only on the

10  basis of articulated facts known to the court, not on the basis

11  of unsupported hypothesis or conjecture." Id.

12      In this case, the right of public access to hearing

13  transcripts and exhibits is outweighed by petitioner's

14  constitutional right to a fair trial if he is retried. Because

15  Bittaker acknowledged that any release of privileged information

16  would result in unfair prejudice to the petitioner on retrial,

17  the fact that the hearing records contain privileged information

18  is an adequate factual basis for denying public access as to

19  those portions of the record. The common-law presumption in

20  favor of public access must give way to petitioner's interest in

21  protecting his attorney-client privilege so that he may secure a

22  fair trial if he succeeds on his habeas claim.

**IV. Conclusion**

23

24

25  For the foregoing reasons, it is hereby ORDERED:

26          [1] Petitioner's motion for reconsideration of the

10

magistrate's May 17, 2010 order is GRANTED.

[2] The testimony of trial defense personnel shall take place in a closed hearing, and the entire transcript shall temporarily remain under seal.

[3] Within twenty (20) days following the closing of the evidentiary hearing, petitioner shall file under seal a statement identifying each portion of the evidentiary hearing transcript and each portion of any exhibit that he believes is protected by the attorney-client or work-product privilege.

[4] Within twenty (20) days of the filing of petitioner's statement, respondent shall file a responsive statement, also under seal.

[5] Within ten (10) days of the filing of respondent's response, petitioner may file a reply.

[6] Thereafter, the magistrate judge will designate those portions of the final transcript that shall remain under seal and set a post-hearing briefing schedule.

[7] The magistrate judge will keep sealed all currently sealed transcripts and exhibits either until the time for a motion for reconsideration has passed or as ordered by the district judge if such motion is filed. At that time, the court will issue a protective order for the sealed information that will, specify that the information will be protected throughout the proceedings incident to the petition for write of habeas

corpus pending before this court, and through any retrial of all
or any portion of petitioner's criminal case.

IT IS SO ORDERED.

DATED: September 30, 2010.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

12