IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES D. RIEL,

      Petitioner,                    No. CIV S-01-0507 LKK KJM

     vs.                            DEATH PENALTY CASE

WARDEN, San Quentin
  State Prison,

      Respondent.                 <u>ORDER</u>

                                    /

          Petitioner's May 19, 2010 motion to preclude the testimony of respondent's "rebuttal" witnesses came on for hearing June 16, 2010 before the undersigned. After the hearing, the court ruled on one aspect of petitioner's motion, namely the admissibility of witness testimony regarding post-trial events, and permitted petitioner to supplement the remaining issues in the motion in limine after conducting discovery. June 18 and 23, 2010 Orders (Docket Nos. 391 and 398). On August 20, 2010, petitioner filed a supplemental brief. (Docket No. 433.) The June 23 Order permitted respondent to file a response by September 3. He has not done so, nor has he sought an extension of time. Accordingly, the court will consider the briefs submitted by the parties on petitioner's May 19 motion, the arguments of counsel at the June 16 hearing, and petitioner's supplemental brief.

This order also addresses respondent's first and petitioner's second motions in limine, both filed on July 2, 2010. (Docket Nos. 403 and 404.) Those motions came on for hearing before the undersigned on September 1, 2010. Tivon Schardl and Joan Fisher appeared for petitioner. Robert Bacon participated telephonically for petitioner. Heather Gimle and Eric Chistoffersen appeared for respondent. After hearing the arguments of counsel, the court informed the parties that due to the substantial overlap between petitioner's first motion in limine and the remaining motions, the court would wait until it had received the supplemental briefing on the first motion before ruling on any of the motions in limine.

Finally, because resolution of the motions in limine makes it possible, the court resolves issues surrounding the manner of taking expert witness testimony, petitioner's request to permit the testimony of "sur-rebuttal" experts, and respondent's request to permit testimony from Dr. Dunn in response to the "sur-rebuttal" experts.

I. Petitioner's May 19 Motion in Limine

Petitioner moves to exclude the testimony of respondent's "rebuttal" witnesses on two grounds: (1) because respondent should have identified those witnesses as "case-in-chief" witnesses; and (2) because respondent's summaries of those witnesses' testimony are inadequate to permit petitioner to prepare for the evidentiary hearing.

A. Respondent's Classification of Witnesses as "Rebuttal" Witnesses

Petitioner objects to respondent's identification of sixteen of his seventeen evidentiary hearing witnesses as "rebuttal" witnesses. Petitioner relies on a number of cases in support of his argument that "rebuttal" witnesses should not be permitted to testify if they could

/////
/////
/////
/////
/////

2

have testified as part of the party's case-in-chief. Petitioner also relies on Federal Rule of Civil Procedure 37(c)(1), which provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Petitioner argues that the prejudice he suffers is that he "has no opportunity at all to present true rebuttal witness, because he lacks timely notice of sixteen of Respondent's seventeen witnesses." (Docket No. 358 at 8:13-14.)

### 1. <u>Classification of Witnesses</u>

Petitioner relies on case law in which district courts excluded "rebuttal" witnesses by finding they should have been identified as "case-in-chief" witnesses. Almost every case cited, however, involved the presentation of a new witness at the time of trial. The courts' rulings focus on the fact the other parties did not have time to prepare. <u>See</u>, <u>e.g.</u>, <u>Emerick v. United States Suzuki Motor Corp.</u>, 750 F.2d 19, 21-22 (3rd Cir. 1984). That is not the case here. The problem here appears to be one of semantics, rather than of prejudice. A review of the pre-evidentiary scheduling proceedings sheds some light on the problem.

On March 27, 2009, the court granted in part and denied in part petitioner's February 22, 2005 Motion for an Evidentiary Hearing. (Docket No. 212.) Thereafter, this court ordered the parties to file a joint statement proposing, among other things, a timeline for pre-evidentiary hearing work, including identification of witnesses and exhibits. (Docket No. 222 at 3.) In the June 19, 2009 Joint Statement, the parties proposed a pre-evidentiary hearing schedule that included dates for exchanging witness lists and providing expert disclosures. The parties proposed different dates for these activities. In addition, with respect to the exchange of witness lists, respondent specifically stated in a footnote that his "rebuttal" witness list should be disclosed ten days after provision of petitioner's witness list. (Docket No. 237 at 2 n.1.) The footnote went on to state: "Each party may call any witnesses designated by the other. Witness

3

1 list should include a summary of the witness' proposed testimony.  No other witness will be
2 permitted to testify unless the witness is an unanticipated rebuttal witness and the court and
3 opposing party are promptly notified upon discovery of the witness." (Id.)  Petitioner did not
4 oppose this procedure in the Joint Statement.  In the Joint Statement, each party also proposed a
5 date for "Petitioner's expert disclosures under Rule 26(a)(2)."  The parties agreed that "within 30
6 days" after the filing of petitioner's expert disclosures, respondent would file "rebuttal expert
7 disclosures, if any, pursuant to Rule 26(a)(2)(C)(ii)." (Id. at 2.)

8                On July 8, 2009, the court conducted a status conference and hearing on
9 discovery motions.  During that hearing there was no objection by petitioner to respondent's
10 suggestion that he should be permitted to identify "rebuttal experts" after petitioner identified his
11 experts or that respondent should be permitted to identify lay "rebuttal" witnesses after petitioner
12 had submitted his witness list.  In a July 9, 2009 Order, the court noted that petitioner's counsel
13 agreed during the hearing to identify his lay witnesses on a staggered basis. (Docket No. 247.)
14 The purpose of staggering the identification of petitioner's witnesses was to permit respondent to
15 begin interviewing those witnesses to determine whether some should testify in court.
16 (Transcript of 7/8/09 Hearing, Docket No. 261 at 33:8-25.)  The first indication that petitioner
17 might not agree to a procedure that required him to identify his witnesses before respondent
18 identified his witnesses was in a July 17, 2009 proposed time line for identifying lay witnesses.
19 (Docket No. 249.)  There, petitioner's counsel stated they would "provide the State on the first
20 working day of every month commencing August 3, 2009, the names, addresses and relevant
21 declarations or other summaries of any lay witnesses Petitioner's counsel then knows are likely
22 to be called to testify on his behalf at the evidentiary hearing to be scheduled herein." (Id. at 1.)
23 The final sentence of petitioner's proposal simply states, "Petitioner anticipates Respondent will
24 do the same with respect to his proposed witnesses." (Id. at 2.)
25 /////
26 /////

4

Whatever the understandings of the parties may have been, the court's August 7, 2009 pre-evidentiary hearing scheduling order became the required procedure. That order stated, in pertinent part:

> Each party will provide the other party on the first working day of every month commencing September 1, 2009, the names, addresses and relevant declarations or other summaries of testimony of any lay witnesses that party then knows are likely to be called to testify on his or her behalf at the evidentiary hearing. By November 20, 2009, the parties shall file and serve final witness lists, including addresses and a summary of each witness's proposed testimony. By November 30, 2009, the parties may file and serve a list of any rebuttal witnesses. No other witnesses will be permitted to testify unless the witness is an unanticipated rebuttal witness and the court and opposing party are promptly notified upon discovery of the witness.

(Docket No. 259 at 1-2.) With respect to expert witnesses, a date was set by which "the parties shall file and serve the expert disclosures required by Federal Rule of Civil Procedure 26(a)(2)." (Id. at 2.) A month later, the parties were required to "file and serve the disclosures required by Rule 26(a)(2) for any rebuttal experts." (Id.) Again, the order requires the "parties" to follow this schedule. The order did not incorporate the Joint Statement's proposal that petitioner would first identify his experts followed by respondent's identification of "rebuttal" experts. Neither party sought reconsideration of the August 7, 2009 Order.[1]

The August 7 Order made clear that both parties were required to notify the other no later than November 20, 2009 of any lay witnesses "that party then knows are likely to be called to testify on his or her behalf at the evidentiary hearing." However, the August 7 Order also made clear that both parties could identify "rebuttal" witnesses ten days later. Petitioner has argued that respondent has no right to present "rebuttal" witnesses, only "sur-rebuttal" witnesses

---

[1] In a January 22, 2010 Order, the court granted extensions of time using the same language. "[T]he parties'" deadlines to file rebuttal witness lists, expert disclosures, and rebuttal expert disclosures were extended. Again, neither party objected to these requirements. (Docket No. 302 at 2.)

in response to petitioner's "rebuttal" witnesses.[2]  That is not the procedure contemplated by the August 7 Order.  Rather, both parties were required to identify their "case-in-chief" witnesses by November 20; then both parties were required to identify any "rebuttal" witnesses ten days later.  If petitioner's interpretation were correct, then respondent would have been required to identify his "sur-rebuttal" witnesses in response to petitioner's "rebuttal" witnesses before seeing who petitioner intended to put on as a rebuttal witness.  The procedure contemplated by the August 7 Order allowed each party to identify witnesses to rebut the other party's case-in-chief.

Petitioner argues that any witness respondent knew was likely to testify should have been identified as a "case-in-chief" witness.  While the language of the order did require each party to identify by November 20 those witnesses "the party then knows are likely to testify," the court recognizes there could be some confusion, particularly given the parties' prior statements on the issue, about the use of the term "rebuttal" in the August 7 Order.[3]  Typically, rebuttal witnesses are not identified in a pre-trial statement or order.   Local Rule 281 only requires the parties to identify "witnesses" in their pre-trial statements.  See also 62A  Am. Jur. 2d Pretrial Conf. § 32 (2010) ("Typically, pretrial orders under the Federal Rule [16] require disclosure by both parties of all prospective witnesses except 'rebuttal witnesses.'  Such orders have engendered confusion as to the meaning of 'rebuttal witness.'"); Morgan v. Commercial Union Assurance Cos., 606 F.2d 554, 555-56 (5th Cir. 1979) (court recognizes that boilerplate pre-trial orders have "engendered confusion" as to the meaning of the term "rebuttal witness").
/////

---

[2]  Petitioner's supplemental brief is framed in these terms.

[3]  Respondent stated at one point that his entire case is a "rebuttal" case.  As petitioner points out, that position is belied by the fact respondent did name a witness by November 20, 2009.  Further, to the extent respondent was confused about his obligation to identify witnesses by then, he was made aware in petitioner's July 17, 2009 Notice that petitioner felt respondent must also identify lay witnesses no later than November 20.  The court's subsequent order on August 7 should have cleared up any confusion about respondent's obligations with respect to identifying witnesses.

The identification of only "case-in-chief" witnesses in pretrial proceedings was the procedure used by courts in most of the cases petitioner cites in support of the proposition that a civil defendant, as respondent is here, should not be permitted to put on the testimony of a rebuttal witness if that witness could have been identified and named in that party's case-in-chief. In those cases, unlike the situation in the instant case, a party attempted to bring in a rebuttal witness for the first time at trial. Because of the obvious potential prejudice to the other side of unanticipated testimony, courts examined closely whether the proffering party should have identified that witness in her case-in-chief. In Morgan, 606 F.2d at 555-56, the parties exchanged witness lists for all witnesses except rebuttal witnesses prior to trial. At trial, the defendant sought to present the testimony of a previously unidentified witness as "rebuttal" to testimony presented by the plaintiff. The court held that "a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness.'"[4] Id. at 556; see also Wong v. Regents of Univ. of Calif., 410 F.3d 1052, 1060-61 (9th Cir. 2005) (district court appropriately precluded expert named late because "the necessity of the witness" could have "been reasonably anticipated at the time the lists were exchanged"); Peals v. Terre Haute Police Dept., 535 F.3d 621, 630-31 (7th Cir. 2008) (appropriate for trial court to exclude previously unidentified rebuttal witness where witness's testimony should have been presented in party's case in chief); Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 202-03 (1st Cir. 1996) (court excludes experts identified at the last minute as "rebuttal"); Emerick, 750 F.2d at 22 ("It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of

---

[4] Petitioner argues this quoted statement supports a rule that no defense witness may ever be a rebuttal witness. As described above, the court's August 7, 2009 Order specifically stated that both parties could identify "rebuttal" witnesses. The statement in Morgan does not, therefore, control this case. See also Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1181 n.7 (11th Cir. 2002) (Morgan, among other cases, did not create a hard and fast rule about the presentation of evidence; trial court has discretion to admit or exclude evidence).

proof."); Smith v. Conley, 584 F.2d 844, 845-46 & n.3 (8th Cir. 1978) (expert called by plaintiff in rebuttal properly excluded because should have been called in case-in-chief; plaintiff failed to disclose the expert as a potential witness). In the present case, there is no issue of unanticipated testimony. Rather, as set forth below, because the evidentiary hearing has been continued, and based on the holdings set forth in this order, petitioner will be given an opportunity to put forth sur-rebuttal testimony if he wishes.

While respondent was not required to name his rebuttal witnesses as case-in-chief witnesses, the court finds there should be no confusion in this case that the term "rebuttal" refers to a witness who is intended to contradict evidence introduced by the other party. See Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006) ("'The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.'" (quoting United States v. Lamoreaux, 422 F.3d 750, 755 (8th Cir. 2005)); cf. Fed. R. Civ. P. 26(a)(2)(C) (rebuttal experts allowed solely to "contradict or rebut evidence on the same subject matter identified by another party").[5]  "As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent-and not to establish a case-in-chief." Marmo, 457 F.3d at 759 (citing Cates v. Sears, Roebuck & Co., 928 F.2d 679, 685 (5th Cir.1991)). This court has previously stated "that it intends anyone testifying as a 'rebuttal' witness to be limited to contradicting, impeaching or defusing an opposing party's witness." May 20, 2010 Order (Docket No. 359) at 6.

Because the court has discretion to control the manner in which the parties identify witnesses and the order of evidence, and because the August 7, 2009 Order allowed both parties to identify rebuttal witnesses without limitation, the court will permit respondent to put on the witnesses identified as rebuttal witnesses, with the exception of those witnesses whose

---

[5] The trial court in Marmo issued an order establishing the progression of evidence. It set out witnesses to testify in each party's case-in-chief and those to testify in rebuttal. The issue in Marmo involved an attempt to convert a "rebuttal" expert to a "case-in-chief" expert. The Court of Appeals held that the district court did not abuse its discretion by finding that the plaintiff had failed to show good cause to modify the progression order.

proposed testimony the court previously found inadmissible. June 18, 2010 Order (Docket No. 391) at 2-3; see Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1181 n.7 (11th Cir. 2002) (trial court has discretion to admit or exclude evidence); Fed. R. Evid. 611(a) ( "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence . . . ."); Smith, 584 F.2d at 846 (trial court's discretion in managing conduct of trial "extends to the reception of evidence in rebuttal"); Weiss v. Chrysler Motors Corp., 515 F.2d 449, 457-58 (2nd Cir. 1975) (trial judge has discretion to exclude or admit rebuttal evidence).

### 2. Applicability of Rule 37(c)(1)

Rule 37(c)(1) is limited to a party's failure "to provide information or identify a witness as required by Rule 26(a) or 26(e)." Rules 26(a) and 26(e) address automatic disclosure requirements. The court in this case has referred to Rule 26 to identify types of information but has not required the parties to follow the disclosure timelines set out therein.[6] In fact, habeas corpus proceedings are exempted from the automatic disclosure requirements of Rule 26. Fed. R. Civ. P. 26(a)(1)(B)(iii).

Even if Rule 37(c)(1)'s requirements were applied, the court finds any violation by respondent would be harmless.[7] Respondent's "rebuttal" witnesses are limited to testifying in direct response to petitioner's witnesses. Further, the court will permit the parties to identify sur-rebuttal witnesses. New witnesses may be introduced at trial only if their testimony is unanticipated rebuttal or sur-rebuttal testimony.

---

[6] For the same reason, the cases cited by petitioner regarding the exclusion of evidence under Rule 37(c)(1) are not on point. See, e.g., Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106-07 (9th Cir. 2001) (defendant's two-year delay in providing experts report pursuant to Rule 26(a) justified district court's decision to exclude that expert as a sanction).

[7] Petitioner made an additional argument that he is prejudiced because simultaneous disclosure of witness lists is an important part of the adversarial process. That argument ignores the fact that plaintiffs are frequently required to produce their witness lists before defendants in civil suits. See, e.g., Local Rule 281(a)(1) (plaintiff's pre-trial statement, which includes a witness list, due fourteen days before pretrial conference; all other parties' statements due seven days before).

B. <u>Adequacy of Respondent's Witness Summaries</u>

Petitioner argues he cannot prepare for respondent's witnesses because he does not know how they will testify and because respondent's summaries of their testimony contain objectionable material. Respondent argues he cannot more specifically summarize the witnesses' testimony because they are testifying in rebuttal to petitioner's witnesses, whose testimony is also summarized generally.

The court's order required each party to provide a "summary of each witness's proposed testimony." Aug. 7, 2009 Order (Docket No. 259) at 2. The court did not require respondent's summaries to establish that the testimony is not objectionable on the grounds of hearsay. The court also finds no reason to exclude respondent's witnesses or otherwise limit their testimony based on respondent's saying the summaries are based on "information and belief."[8] Objections to the witnesses' testimony may be made when they testify. The purpose of the summaries simply is to let the parties know the subject matter of each witness's testimony.

Respondent's point that he cannot summarize his rebuttal witnesses' testimony is well taken. For example, petitioner summarized the testimony of Paul Morey as follows:

> On information and belief, we anticipate that, if called, Paul Morey will testify to matters relevant to Claims 5, 6 and 9 of the First Amended Petition for Writ of Habeas Corpus [Doc 36 pp. 82-97, 102-104] including the location of the beer cans collected at the scene.

Pet'r's Nov. 20, 2009 Witness List (Docket No. 282) at 5. Petitioner's summary of the testimony of Robert Dolliver is identical. Respondent's statement that Robert Maloney will testify in rebuttal to the testimony of Morey and Dolliver is sufficient.

/////

/////

/////

---

[8] Petitioner's summaries of many witnesses' testimony begin with the same phrase. Pet'r's Nov. 20, 2009 Witness List (Docket No. 282).

10

The court also finds the summaries of respondent's other remaining lay witnesses sufficient, given that their testimony will be limited to rebutting the testimony of petitioner's witnesses.[9]

In his supplemental brief, petitioner also complains that respondent's interrogato/ry answers show that respondent intends to have his witnesses testify beyond the scope of rebuttal. As stated previously, respondent's "rebuttal" witnesses are limited to testimony contradicting evidence put on by petitioner. Petitioner is free to object during the evidentiary hearing to questions or testimony he feels exceed that limitation.

### C. Order of Proof

An issue relevant to petitioner's May 19 motion in limine is the order of proof. As noted, the court recognizes that using the term "rebuttal" witnesses in the August 7, 2009 Order could have caused confusion about the order of proof. To be clear, the court intends petitioner to put on his case-in-chief, respondent to put on his case-in-chief and his rebuttal case, petitioner to put on any rebuttal to respondent's case-in-chief and any sur-rebuttal. Again, witnesses who have been identified by a party as "rebuttal" witnesses are limited to testimony contradicting evidence brought forth in the other party's case-in-chief. Witnesses identified as "sur-rebuttal" witnesses are limited to testimony contradicting evidence brought forth in the other party's rebuttal case. The court understands that this order of evidence is complicated by the fact some witnesses' testimony will be taken out of court. After all outstanding pre-evidentiary hearing issues are resolved, the parties may propose an overall schedule for taking testimony.

---

[9] Petitioner notes respondent's apparent lack of preparation of his witnesses. Respondent's witnesses will be limited to testifying regarding the subject matter of the summaries provided and will be limited to testifying in rebuttal to petitioner's witnesses. Any lack of preparation by respondent will therefore only hurt respondent. It should also be noted that the court's August 7, 2009 Order did not require the parties to submit summaries of the testimony of non-expert rebuttal witnesses. Recognizing that there was some confusion about the classification of witnesses, the court finds respondent appropriately provided petitioner with summaries of their witnesses' testimony.

11

### D. Calling Other Party's Witnesses

In his supplemental brief, petitioner raises a concern that respondent intends to rely on the testimony of petitioner's trial attorneys in his case-in-chief. He argues that since respondent did not identify the attorneys as witnesses or supply summaries of their testimony, they should not be allowed. In their lay witness lists submitted on November 20, 2009, both parties stated that they reserved the right to call witnesses listed by the other party. (Docket Nos. 282 at 10 & 283 at 1.) However, the August 7, 2009 Order made clear that any witness a party seeks to have testify in his case-in-chief should have been identified and a summary of that witness's testimony should have been provided by November 20. Unless the witness's testimony could not have been anticipated, the court will not allow previously unidentified witnesses to testify at the hearing.

## II. Petitioner's July 2 Motion in Limine

Petitioner seeks to limit the evidentiary hearing in three ways. First, he seeks to exclude testimony from his trial counsel that would provide "post-hoc rationalizations" for their conduct. Second, petitioner asks the court to limit respondent's experts' testimony to the subjects covered in their reports. Third, petitioner wants the court to clarify that respondent's expert Paulette Sutton is limited to testifying in rebuttal to petitioner's forensic expert Charles Morton.

### A. Excluding Post-hoc Rationalizations of Trial Counsel

Petitioner argues trial counsel should not be permitted to testify about what they would have done had they known certain evidence. In his brief, petitioner bases this argument primarily on a number of cases in which courts have held they should not attempt to construct rationalizations for trial counsel's conduct. For example, in United States v. Burrows, 872 F.2d 915, 918 (9th Cir. 1989), the Court of Appeals held the district court erred by assuming, without record support or the benefit of an evidentiary hearing, that trial counsel must have known about the petitioner's mental problems and must have therefore made a strategic decision not to pursue

a mental defense. These cases do not support petitioner's argument. Rather, petitioner is attempting to prevent respondent from asking his trial counsel whether they would have changed their strategies at trial had they known about certain evidence. Essentially, this type of question would be asking trial counsel to act as an expert by opining about the effect of information on the decision-making of a hypothetical reasonable attorney at the time of trial. At argument, petitioner's counsel stressed that this too would be impermissible. In addition, in his reply brief counsel added a new argument that respondent should not be permitted to ask leading questions of petitioner's trial counsel because they are sympathetic witnesses.

Petitioner has not shown a basis to limit in advance respondent's questioning of petitioner's trial attorneys. Petitioner does not have the legal support for a wholesale bar on respondent's questions to trial counsel about whether new information would have changed their strategy. That said, the court cautions respondent's counsel that petitioner's trial attorneys will not be permitted to testify as Strickland experts, but as percipient witnesses only. Petitioner's argument that respondent's counsel may not be permitted to ask leading questions is raised too late. Petitioner's counsel may, of course, object to questions he considers inappropriate during the evidentiary hearing.

### B. Limitation on Expert Testimony

The court already has held that Dr. Dunn is limited to testifying to what is contained in his report. June 9, 2010 Order (Docket No. 381) at 1. In addition, and as discussed above, the court also has held that Dr. Dunn's testimony is limited to rebuttal. Id. Dr. Sutton's testimony is similarly limited for the reasons set forth above regarding petitioner's first motion in limine. To be clear, all experts will be limited to testifying to matters covered by their reports.

### C. Limitation on Testimony of Paulette Sutton

As held above, Ms. Sutton's testimony is limited to rebutting the testimony of petitioner's forensic expert Charles Morton. Petitioner asks the court to find that a portion of Ms. Sutton's report exceeds appropriate rebuttal. First, petitioner argues that Sutton's opinion

13

that some blood could have ended up on petitioner's clothing when the victim was stabbed amounts to a new theory of the case. At hearing, petitioner's counsel told the court that Virgal Edwards testified at trial that petitioner was in the car when the stabbing took place. If that is the case, the court agrees that Ms. Sutton's opinion regarding blood coming from the stabbings may be inappropriate. However, petitioner did not cite to the record for his statement that the prosecution theory at trial placed petitioner in the car during the stabbings. To permit this court to consider this issue, petitioner should provide an appropriate citation to the trial transcript. He will be given an opportunity to do so.

Petitioner's second argument is that Ms. Sutton should not be permitted to testify about the presence or absence of blood in the car. He states that because Mr. Morton did not mention the car in his analysis of the blood on petitioner's clothing, Ms. Sutton should not be permitted to address it. Ms. Sutton's report analyzes the lack of blood in the car for the purpose of evaluating whether or not the victim was beaten in the car. She does not mention it with respect to the presence of blood on petitioner's clothing. Accordingly, the court agrees that the subject of paragraph 12 of Ms. Sutton's report (Docket No. 349) is not an appropriate subject for her testimony at the evidentiary hearing because it does not rebut Mr. Morton's opinions regarding the blood on petitioner's clothing.

Finally, petitioner argues Sutton should not be permitted to mention the possibility that blood that had pooled on the road could have contributed to the blood found on petitioner's clothing. However, Mr. Morton not only was aware of the pooled blood, but mentioned it in his report.[10] Even if he had not, it was a fact available for his consideration of whether petitioner's or Mr. Edwards' story was supported by the evidence of blood on

/////

---

[10] Mr. Morton's report is attached as exhibit 30 to the state habeas petition lodged here on May 23, 2003. In paragraph 10 of his report, Morton states that it appears "the bulk of the blood loss from the head injuries occurred after Mr. Middleton fell to the ground."

14

petitioner's clothing.  Accordingly, Ms. Sutton's consideration of the pooled blood is appropriate rebuttal evidence.

III.  Respondent's July 2 Motion in Limine

Respondent seeks to preclude the evidentiary hearing testimony of petitioner's Strickland expert and of petitioner's co-perpetrator John Osborne.

    A.  Strickland Expert

Respondent contends petitioner's Strickland expert, David Nevin, should be excluded because: (1) Nevin will not be helpful because in his report he simply applies the law to the facts; (2) Nevin uses phrases such as "utterly failed," which are not legally significant; (3) much of Nevin's opinion is not related to the evidentiary hearing ineffective assistance of counsel claims; and (4) Nevin is not qualified because he is not licensed in California.  The court has already ordered that Mr. Nevin's testimony will be taken by deposition and must be limited to the evidentiary hearing claims.[11]  The court need not strike irrelevant or legally insignificant aspects of Mr. Nevin's report because it has not been admitted as evidence.  If petitioner seeks to present the report as Mr. Nevin's direct testimony, the court will consider at that time respondent's objections identified above.  Respondent's other objections to Mr. Nevin's testimony go to its weight, rather than its admissibility.  Because Mr. Nevin's testimony may be of assistance under Federal Rule of Evidence 702, the court will allow it.

    B.  John Osborne

In a number of claims in the petition, petitioner argues that Osborne was the ringleader in the kidnaping, robbery and murder of the victim.  Osborne invoked the Fifth Amendment at petitioner's trial and did not testify.  While petitioner's trial was pending, Osborne pled guilty to the first degree murder of the victim, among other things.  He later received a sentence of life without the possibility of parole.  Petitioner has submitted a

---

[11] Petitioner asks the court to reconsider the method of taking Mr. Nevins' testimony. The court finds no reason to do so.

declaration from Mr. Osborne in which he states: "After I entered the plea of guilty in exchange for a sentence of LWOP, I would have testified to the following." (Docket No. 329-1, App. 19 at 2.) Based on his declaration, Osborne's testimony would have confirmed petitioner's testimony that petitioner was "passed out" in the back of the car during the robbery and murder. (Id.)

Respondent makes two arguments. First, he argues that Osborne's intended testimony is not relevant to any of the evidentiary hearing claims. Second, he argues that because Osborne invoked the Fifth Amendment, Osborne was not available to testify at petitioner's trial.

Both arguments are based on respondent's assertion that because Osborne said he would not have testified until after he entered a guilty plea, and he did not enter that plea until testimony had concluded in the penalty phase of petitioner's trial, petitioner's trial counsel cannot have erred by failing to investigate and present Osborne's testimony.

Petitioner argues Osborne's testimony is relevant to claim 2, ineffective assistance of counsel for failure to investigate and present evidence at the guilt and penalty phases that, among other things, petitioner was not the ringleader of the group. Contrary to respondent's assertion, petitioner shows that it is possible trial counsel could have convinced the court to allow Osborne to testify at the penalty phase. The parties appear to agree that Osborne pled guilty on the first day the jury was deliberating during petitioner's penalty phase trial. After Osborne pled guilty, upon the stipulation of both parties, the trial court re-opened the evidentiary portion of the proceeding so that the jury could be informed of Osborne's guilty plea. Supp. RT 7960-7963. Further, Osborne's testimony does not show he was necessarily unavailable. He states he would have testified in petitioner's trial after he pled guilty. Respondent points out that Osborne was not sentenced until later, after the jury returned a death verdict in petitioner's case. Certainly, whether or not Osborne would have testified when the trial court re-opened evidentiary proceedings in the penalty phase is an issue about which he can testify here, subject to cross-examination. His potential testimony is relevant to claim 2.

IV. <u>Designation of Sur-rebuttal Experts</u>

In June, petitioner requested modification of the scheduling order to permit the identification of two experts, Dr. Froming and Dr. Miora, to rebut the testimony of respondent's expert Dr. Dunn. (Docket No. 377.) Petitioner filed reports for both experts. (Docket No. 379.) The court finds good cause to permit petitioner to identify these experts as "sur-rebuttal" to respondent's expert. Petitioner not only identified these experts but provided reports from them within thirty days after respondent filed Dr. Dunn's report. Respondent has had ample notice to prepare for the evidentiary hearing. The court recognizes, however, that respondent has not had an opportunity to depose these experts regarding their rebuttal to Dr. Dunn because discovery closed before the court ruled on petitioner's request. If respondent wishes to depose Dr. Miora and to depose Dr. Froming regarding their June 7, 2010 declarations (Docket No. 379-1 & 379-2), respondent shall notify the court within fourteen days of the filed date of this order.

In his opposition to petitioner's second motion in limine, respondent requests an opportunity to submit a supplemental response by Dr. Dunn if Drs. Miora and Froming are permitted to testify in sur-rebuttal. (Docket No. 413 at 4:2-5.) Because Dr. Dunn has already been identified as a witness, the court will allow respondent to make a showing during the evidentiary hearing why he should be permitted to testify to rebut the "sur-rebuttal" testimony of Drs. Froming and Miora. Respondent need not file an additional report from Dr. Dunn to preserve the right to make such a showing. By the same token, petitioner may seek to re-call any of his experts to testify after any additional testimony by Dr. Dunn.

V. <u>Manner of Taking Expert Witness Testimony</u>

This order addresses only the manner of taking the expert witness testimony; it does not propose a schedule for doing so. Until all pre-evidentiary hearing matters are resolved, the court cannot schedule the taking of testimony.

The parties submitted statements concerning the manner of taking expert witness testimony. (Docket Nos. 361 and 366.) Based on the rulings herein, the court finds that the

17

mental health experts should testify in court. Those experts are Dr. Froming, Dr. Stewart, Dr. Miora and Dr. Dunn. Dr. Edwards also was identified as a witness by petitioner. However, it is not clear whether Dr. Edwards will testify as an expert or a percipient witness. In any event, petitioner did not express an opinion about whether Dr. Edwards should testify in or out of court. Respondent asks that Dr. Edwards testify in court because he was a key member of the trial defense team. Because mental health issues are an important part of this evidentiary hearing and because the other mental health professionals and petitioner's trial attorneys will testify in court, the court finds Dr. Edwards should testify in court as well.

The remaining expert witnesses shall testify by deposition in lieu of in-court testimony. They are: Charles Morton, Steven Wilkins, David Nevin and Paulette Sutton. The court finds no justification for the expense of videotaping these expert witnesses. Further, these witnesses need not testify prior to the in-court portion of the evidentiary hearing. The court will permit the parties to determine whether they will submit the direct testimony of any of these experts by their declarations or reports when a schedule for taking testimony is set.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Petitioner's May 19, 2010 Motion in Limine (docket no. 358) is granted in part and denied in part as set forth above.

2. Petitioner's July 2, 2010 Motion in Limine (docket no. 404) is granted in part and denied in part as set forth above. Within fourteen days of the filed date of this order, petitioner shall provide the court with citations to the state trial transcript to support his assertion that Virgal Edwards testified that petitioner was in the car when the stabbing took place, as described above in section II.C. Petitioner's submission shall include only citations to the transcript; the court will not consider further legal argument. Within seven days after petitioner's submission, respondent may file responsive citations to the transcript only.

3. Respondent's July 2, 2010 Motion in Limine (docket no. 403) is denied.

1  4. Petitioner's June 7, 2010 request to modify the scheduling order (docket no. 377) is granted as set forth above. Within fourteen days of the filed date of this order, respondent shall notify the court whether he wishes to depose Dr. Froming and/or Dr. Miora.

5. The testimony of the following witnesses shall be taken in court: Dr. Froming, Dr. Stewart, Dr. Miora, Dr. Dunn and Dr. Edwards. The testimony of the following witnesses shall be taken by deposition in lieu of in-court testimony: Charles Morton, Steven Wilkins, David Nevin and Paulette Sutton.

6. As the court announced to the parties during the September 1, 2010 hearing, respondent's August 31, 2010 Motion for a 60-Day Extension of Time to depose Dr. Dunn (docket no. 435) is granted.

DATED: November 4, 2010.

_____
U.S. MAGISTRATE JUDGE

riel 3 mtns in lim.or